**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DAIMLERCHRYSLER INSURANCE CO., LLC, | : | |
| | : | |
| Plaintiff and Counterclaim Defendant, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN A. PAMBIANCHI, | : | No. 3:08cv943 (MRK) |
| | : | |
| Defendant, Counterclaimant, and Third-Party Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CHRYSLER FINANCIAL CO., LLC, | : | |
| | : | |
| Third-Party Defendant. | : | |

**<u>MEMORANDUM OF DECISION</u>**

This case arises from a dispute between John A. Pambianchi – the president and a part-owner of Pamby Motors, Inc. ("Pamby Motors"), a Chrysler automobile dealership in Ridgefield, Connecticut – and two different Chrysler entities – DaimlerChrysler Insurance Co., LLC ("DaimlerChrysler Insurance") and Chrysler Financial Co., LLC ("Chrysler Financial").[1]

---

[1]  The Court occasionally uses the term "Chrysler" in this Memorandum of Decision to generally describe the Chrysler automobile brand and various Chrysler businesses.  However, Chrysler Financial and DaimlerChrysler Insurance are distinct entities.  DaimlerChrysler Insurance is an insurance company; Chrysler Financial provides retail financing through automotive dealerships. Although Mr. Pambianchi asserts claims against both DaimlerChrysler Insurance and Chrysler Financial, he does not suggest that either can be held liable for the other entity's acts or omissions. The Court has therefore attempted to distinguish between those entities as clearly as possible.

Mr. Pambianchi is not just the president and a part-owner of a Chrysler dealership:  he is also a Chrysler customer.  In 2001, Mr. Pambianchi leased a Jeep Cherokee from Chrysler Financial through his dealership as a gift for his 17-year-old son Matthew.  Matthew was later involved in a collision that seriously injured a motorcyclist and his passenger.

Pending before the Court are Chrysler Financial's Motion for Summary Judgment [doc. # 58] and DaimlerChrysler Insurance's Motion for Summary Judgment [doc. # 61].  The central issues in this case are whether a broadly-sweeping indemnification clause in Mr. Pambianchi's lease agreement with Chrysler Financial is ambiguous or unconscionable, and if it is neither ambiguous nor unconscionable, whether Chrysler Financial and DaimlerChrysler Insurance forfeited their rights to seek indemnification from Mr. Pambianchi based on their subsequent conduct.  Chrysler Financial and DaimlerChrysler Insurance argue in support of their motions that the indemnification clause in the lease agreement is unambiguous and enforceable, and that neither did anything to lose its right to seek indemnification under the lease agreement.  As such, DaimlerChrysler Insurance asserts that it is entitled to judgment on its indemnification claim against Mr. Pambianchi as Chrysler Financial's subrogee and on Mr. Pambianchi's counterclaims against it.  Chrysler Financial also asserts that it is entitled to judgment on Mr. Pambianchi's third-party claims against it.  For the reasons set forth below, the Court agrees and therefore GRANTS both motions for summary judgment.

## I.

Because this case is currently before the Court at the summary judgment stage, the Court sets forth the facts in the light most favorable to Mr. Pambianchi, the nonmoving party here.  *See, e.g.*,

*DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 74 (2d Cir. 2010) (per curiam).  Unless the Court notes otherwise, the facts are undisputed.

Mr. Pambianchi is the president and a part-owner of Pamby Motors, an automobile dealership in Ridgefield, Connecticut.  In 2001, Mr. Pambianchi leased a Jeep Cherokee from Chrysler Financial through his dealership as a gift for his 17-year-old son Matthew.  The agreement between Mr. Pambianchi and Chrysler Financial was memorialized in a two-page form lease ("the Lease") – in all likelihood, the same form lease that any person leasing a Chrysler automobile from Chrysler Financial would have used.  *See* Ex. H to DaimlerChrysler Insurance's Mot. for Summary J. [doc. # 61-11].  The Lease required Mr. Pambianchi to carry a minimum amount of insurance – at least $100,000.00 for bodily injury or death for any one person and at least $300,000.00 for any single accident – and required Mr. Pambianchi's insurance policy to name Chrysler Financial as a loss payee and as an additional insured.  *See id.* ¶ 16.

The Lease also included the following broadly-phrased indemnification clause:

> You will indemnify the Lessor and Holder from any loss or damage to the Vehicle and from all claims, losses and costs related to the use or condition of the vehicle. You will pay all fines and tickets imposed on the Vehicle or its driver.  If you do not pay and Holder does pay, You will reimburse Holder and pay a $20 fee for each fine paid for You.

*Id.* ¶ 27.  The Lease further provided that "[a]ny change to this Lease must be in writing and signed by Holder, however, if permitted by law, extensions, deferrals or due date changes may be agreed to orally by You and us, and we will send you written confirmation of our agreement."  *Id.* ¶ 28. Finally, the Lease also provided that "[t]he law that will apply to this Lease is the law of the state where the Lessee resides at the time of entering this Lease or within 30 days after entering this

Lease.  If any law does not allow any of the agreements in this Lease, they will be void.  The rest of

this Lease will still be good." *Id.* ¶ 30.  Mr. Pambianchi resided in Connecticut at the time when he

entered the Lease and has not relocated since he entered the Lease.

On July 7, 2002, Matthew was driving the Cherokee when it collided with a motorcycle

operated by Martin C. Sabba.  Mr. Pambianchi believed at the time and continues to believe that Mr.

Sabba was at least partially at fault in causing the collision.  *See* Ex. A to Chrysler Financial's Mot.

for Summary J. [doc. # 58-8] at 25.  The collision seriously injured Mr.  Sabba and his passenger,

Annette Sabba.  When Mr. Pambianchi learned about the collision, he immediately called his

insurance broker to provide notice.  Mr. Pambianchi was thereafter contacted by Royce L. Vehslage,

an attorney for his insurance carrier, Fireman's Fund Insurance Co. ("Fireman's Fund").  Mr.

Pambianchi and Attorney Vehslage communicated on more than one occasion, but Mr. Pambianchi

recalls having met Attorney Vehslage only once, at a deposition of Matthew Pambianchi that took

place sometime after January 14, 2003.  *See id.* at 18.

On January 14, 2003, the Sabbas sued Matthew Pambianchi, Mr. Pambianchi, Mr.

Pambianchi's wife Eileen Pambianchi, and Chrysler Financial for damages in this Court.  *See* Compl.

[doc. # 1], *Sabba v. Pambianchi*, No. 3:03cv97 (MRK) (Jan. 14, 2003).  As the owner of the

Cherokee, Chrysler Financial was liable for the Sabbas' injuries to the same extent as Matthew

Pambianchi under Connecticut law.  *See* Conn. Gen. Stat. § 14-154a ("Any person renting or leasing

to another any motor vehicle owned by him shall be liable for any damage to any person or property

caused by the operation of such motor vehicle while so rented or leased, to the same extent as the

operate would have been liable if he had also been the owner.").  As Chrysler Financial's insurer,

DaimlerChrysler Insurance was responsible for Chrysler Financial's liabilities and legal costs.

On April 23, 2003, DaimlerChrysler Insurance sent Mr. Pambianchi a letter by regular and by certified mail. *See* Ex. J to DaimlerChrysler Insurance's Mot. for Summary J. [doc. # 61-13]. The letter stated as follows:

> The lease agreement between you and [Chrysler Financial] contains a complete indemnification clause as to any costs incurred by [Chrysler Financial]. I refer you to paragraph 27 of the contract, "You will indemnify Lessor and Holder from any loss or damage . . . from all claims, losses, and costs related to the use . . . of the vehicle." As such, should [Chrysler Financial] or [DaimlerChrysler Insurance] be called upon to make any payments in this matter, we will look to you for full indemnification and reimbursement of all payments.

*Id.* Mr. Pambianchi remembers receiving the letter and recalls sending it to Attorney Vehslage. *See* Ex. A to Chrysler Financial's Mot. for Summary J. [doc. # 58-8] at 28. However, he claims that he did not understand what the letter meant at the time he received it. *See id.* at 44.

Meanwhile, the Sabbas' case continued to move forward throughout 2003 and 2004. On September 9, 2004, the parties held a settlement conference before United States Magistrate Judge William I. Garfinkel. *See* Order [doc. # 28], *Sabba v. Pambianchi*, No. 3:03cv97 (MRK) (Sept. 7, 2004). At the conference, Attorney Vehslage offered to settle the case for $1,500,000.00 – the full amount of insurance that Mr. Pambianchi carried – but the Sabbas rejected that offer. *See* Ex. G to DaimlerChrysler Insurance's Mot. for Summary J. [doc. # 61-10]. On January 6, 2005, Attorney Vehslage sent the following letter to a DaimlerChrysler Insurance employee:

> To date DaimlerChrysler Insurance has yet to extend any type of offer on this very serious matter. Fireman's Fund has extended the entirety of their policies, $1,500,000. This offer has been rejected. As I believe the reasonable potential exposure to the Pambianchis is well above that amount, it is incumbent upon DaimlerChrysler Insurance to make reasonable efforts to settle this case within their policy limits. The demand currently being made by the plaintiff is within the

DaimlerChrysler Insurance policy limits and I note no attempt by DaimlerChrysler Insurance to resolve this matter within those limits has ever been made.

*Id.* On January 18, 2005, this Court dismissed Mr. and Mrs. Pambianchi from the Sabbas' case, leaving Matthew Pambianchi and Chrysler Financial as the only remaining defendants. *See* Order dated Jan. 18, 2005, *Sabba v. Pambianchi*, No. 3:03cv97 (MRK).

On January 20, 2005, the Sabbas' case settled for $2,100,000.00. Fireman's Fund paid $1,500,000.00 of the settlement on behalf of Matthew Pambianchi. DaimlerChrysler Insurance paid the other $600,000.00. Attorney Vehslage told Mr. Pambianchi about the proposed settlement before it became final. *See* Ex. A to Chrysler Financial's Mot. for Summary J. [doc. # 58-8] at 14. Mr. Pambianchi approved of the settlement. *See id.* Specifically, when Attorney Vehslage told Mr. Pambianchi that DaimlerChrysler was going to contribute $600,000.00 to the settlement, Mr. Pambianchi said: "[I]f that's what it takes to get it done, we're out, we're done, let's get it over with." *Id.* Although he knew about the settlement and agreed to it, Mr. Pambianchi now insists that he had a potential malpractice claim against Mr. Vehslage for failing to inform him that DaimlerChrysler Insurance could seek indemnification to recover its $600,000.00 contribution, as well as for failing to negotiate a more favorable settlement with the Sabbas. *See* Answer [doc. # 11] at 9; *see* Ex. A to Chrysler Financial's Mot. for Summary J. [doc. # 58-8] at 36 ("Q: So your belief in connection with the Sabba case was that it could be settled for $1.5 million or less; is that correct? A: Exactly, I don't think the guy fought hard enough.").

On March 18, 2005, Mr. Pambianchi received a letter from DaimlerChrysler Insurance by regular and by certified mail. *See* Ex. M. to DaimlerChrysler Insurance's Mot. for Summary J. [doc. # 61-13]. The letter read: "Please be advised that this matter has now been settled with

DaimlerChrysler Insurance . . . making a payment . . . in the amount of $600,000.00. . . .  Please be advised that *we will seek reimbursement on a voluntary basis or through litigation, if necessary.*" *See id.* (emphasis added).  When he received the letter, Mr. Pambianchi called Don Miltz, the Director of the Northeast Business Center for Chrysler Financial.  Mr. Pambianchi asserts in his Answer and Counterclaim that Mr. Miltz told him the matter "would be taken care of."  *See* Answer [doc. # 11] at 9.  But Mr. Pambianchi told a very different story in his deposition testimony.  At the deposition, Mr. Pambianchi said that he told Mr. Miltz that DaimlerChrysler Insurance was "coming after" him for $600,000, and that Mr. Miltz replied: "[S]end me everything you've got, *let me see what I can do.*"  Ex. A to Chrysler Financial's Mot. for Summary J. [doc. # 58-8] at 22 (emphasis added).  He did not testify that Mr. Miltz explicitly said he would take care of the problem.

Just as he promised, Mr. Miltz contacted James S. Haan, the Vice President and General Manager of DaimlerChrysler Insurance, to advocate for Mr. Pambianchi.  *See* Haan Aff. [doc. # 58-5] ¶ 4; Miltz Aff. [doc. # 58-7] ¶¶ 3-4.  Mr. Haan told Mr. Miltz that DaimlerChrysler Insurance would not waive its indemnification rights.  *See* Haan Aff. [doc. # 58-5] ¶ 4.  According to Mr. Miltz, he immediately informed Mr. Pambianchi that his request for an indemnification waiver could not be accommodated.  *See* Miltz Aff. [doc. # 58-7] ¶ 5.  Mr. Pambianchi does not recall that Mr. Miltz ever so informed him.  To the contrary, Mr. Pambianchi asserts in his Answer and Counterclaim that Mr. Miltz told him in subsequent conversations that "everything was fine" and that he should "not . . . worry."  *See* Answer [doc. # 11] at 9.

But again, Mr. Pambianchi told a very different story during his deposition testimony.  Mr. Pambianchi admitted in that testimony that after the initial telephone call, he did not have *any* further

conversations with Mr. Miltz about his request for an indemnification waiver. *See* Ex. A to Chrysler Financial's Mot. for Summary J. [doc. # 58-8] at 14. Instead, he assumed from Mr. Miltz's silence that Chrysler Financial had agreed to waive indemnification: "When I first told Don, Mr. Miltz, he said that he would look into it. When I would see Don at meetings *we would never broach the subject*, but it was always – it's kind of like when you talk to your wife, you know what the end of the sentence is going to be, okay? He would never come right out and ask that question, but he would always ask is everything going okay." *Id.* at 36 (emphasis added).[2]

Sometime around 2008, Mr. Miltz retired from Chrysler Financial and was replaced by Vincent Rice. Mr. Miltz had only one conversation with Mr. Rice about his dispute with DaimlerChrysler Insurance. That conversation took place sometime after June 23, 2008 – that is, after DaimlerChrysler Insurance filed its Complaint in this case. According to Mr. Pambianchi,

---

[2] Mr. Pambianchi changed his story yet again in an affidavit submitted in opposition to the pending motions: "After I approached Don in March of 2005, he and [Chrysler Financial] agreed to intercede on my behalf with [DaimlerChrysler Insurance]. After that whenever I would see him, *I would ask* how things were going or where things stood, implicitly asking whether my personal matter had been taken care of or whether I should worry or do anything about it. Don never gave me any indication or hint whatsoever that my matter had not been resolved or that [DaimlerChrysler Insurance] was intending to come after me." Ex. B to Def.'s Mem. in Opp. [doc. # 64-9] at 3 (emphasis added). The new account directly contradicts his earlier testimony that he and Mr. Miltz "never broach[ed] the subject" of the indemnification waiver request again. Ex. A to Chrysler Financial's Mot. for Summary J. [doc. # 58-8] at 14. It also contradicts his earlier testimony that it was *Mr. Miltz* who asked *Mr. Pambianchi* whether "everything [was] going okay," *id.* at 14, rather than the other way around. In this Circuit, a party opposing summary judgment cannot create an issue of fact by submitting an affidavit contradicting that party's prior deposition testimony. *See Margo v. Weiss*, 213 F.3d 55, 60 (2d Cir. 2000); *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."). A district court may even impose sanctions for submitting such an affidavit. *See Margo*, 213 F.3d at 65. The Court therefore ignores the affidavit in resolving the pending motions.

Mr. Rice was "pretty unresponsive to the whole thing." *See* Ex. A to Chrysler Financial's Mot. for Summary J. [doc. # 58-8] at 27. Mr. Pambianchi does not allege that he communicated with anyone else at Chrysler Financial or DaimlerChrysler Insurance about his request for a waiver, and there is no indication in the record of any further communications at any time.

DaimlerChrysler Insurance filed its Complaint against Mr. Pambianchi in this Court on June 23, 2008. DaimlerChrysler Insurance's only claim against Mr. Pambianchi is a claim for indemnification under the Lease as Chrysler Financial's subrogee. Mr. Pambianchi filed an Answer, Counterclaim, and Third-Party Complaint [doc. # 11] on August 19, 2008. Mr. Pambianchi asserts four common law claims against DaimlerChrysler Insurance and Chrysler Financial: promissory estoppel, equitable estoppel, negligent misrepresentation, and innocent misrepresentation. Chrysler Financial filed its Motion for Summary Judgment on May 11, 2010, and DaimlerChrysler Insurance filed its Motion for Summary Judgment on May 18, 2010. Chrysler Financial seeks summary judgment on Mr. Pambianchi's third-party claims against it; DaimlerChrysler Insurance seeks summary judgment on its claim against Mr. Pambianchi as well as on Mr. Pambianchi's counterclaims against it.

## II.

The standard of review this Court must apply when resolving a motion for summary judgment is a familiar one. Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted).  "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A grant of summary judgment is appropriate where there are no disputed issues of material fact and the only disputed issues are purely legal issues that the Court may resolve on its own without the aid of a jury.  *See Linea Area Nacional de Chile S.A. v. Meissner*, 65 F.3d 1034, 1039 (2d Cir. 1995).

### III.

DaimlerChrysler Insurance claims in this case that Mr. Pambianchi owes it $600,000.00, plus interest and costs, under the indemnification clause of the Lease.  Mr. Pambianchi raises three basic arguments in defense to that claim and in support of his counterclaims against DaimlerChrysler Insurance and his third-party claims against Chrysler Financial.  Mr. Pambianchi's first argument is, essentially, that the Lease does not require him to indemnify Chrysler Financial or any of its subrogees for personally injury claims resulting from the use of the vehicle.  His second argument is that even if the language of the Lease's indemnification clause does reach personal injury claims, that clause is both substantively and procedurally unconscionable, and therefore unenforceable as a matter of Connecticut law.  Mr. Pambianchi's third and final argument is that even if Chrysler Financial or any of its subrogees had a legally enforceable right to indemnification from Mr.

10

Pambianchi under the Lease, Chrysler Financial gave up that right through its subsequent conduct. The Court will review each of those arguments in turn.

## A.

The first issue that the Court must resolve is whether the indemnification clause of the Lease required Mr. Pambianchi to indemnify Chrysler Financial or its subrogees for personal injury claims resulting from the use of the vehicle. *See* Ex. H to DaimlerChrysler Insurance's Mot. for Summary J. [doc. # 61-11] ¶ 27.  DaimlerChrysler Insurance paid $600,000.00 to the Sabbas on behalf of Chrysler Financial as part of the settlement, and Mr. Pambianchi classifies the Sabbas' claim as a personal injury claim.  Mr. Pambianchi argues that the language of the indemnification clause is ambiguous with regard to whether Mr. Pambianchi must indemnify Chrysler Financial or its subrogees for that personal injury claim.  Whether contractual language ambiguous is a legal issue that this Court may resolve on its own at the summary judgment stage.  *See N.Y. Marine & Gen. Ins. Co. v. LaFarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010).  If contractual language is ambiguous, the Court must "den[y] . . . summary judgment . . . [unless] extrinsic evidence of the . . . intended meaning of the contract is 'so one-sided that no reasonable person could decide to the contrary.'" *Id.* at 115 (quoting *Compagnie Financiere De Cic Et De L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 158 (2d Cir. 2000).

When analyzing a contract under Connecticut law,[3] this Court must look at the contract as a whole and give operative effect to all of its provisions.  *See Nat'l Grange Mutual Ins. Co. v.*

---

[3] There is no dispute in this case that Connecticut contract law controls the Court's interpretation of the Lease.  *See* Ex. H to DaimlerChrysler Insurance's Mot. for Summary J. [doc. # 61-11] ¶ 30 (choice-of-law provision).

*Santaniello*, 290 Conn. 81, 89 (2009).   The Court's analysis must focus on the intention of the parties, as discerned from the language that they employed.  *See Levine v. Advest, Inc.*, 244 Conn. 732, 745 (1998) (citations omitted).  Where the intent of the parties is clear and unambiguous from the language that the parties employed, the Court must give effect to that intent.  *See Levine*, 244 Conn. at 746 (citations omitted).  Language in a contract is unambiguous if "it has a 'definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion . . . .'" *Id.* (citations omitted).  As a general matter, parties are bound by unambiguous language in a written contract regardless of whether they actually read or understand that language when they sign it.  *See Friezo v. Friezo*, 281 Conn. 166, 199 (2007).

There is nothing ambiguous about the indemnification clause in the Lease.[4]  The terms of the indemnification clause could not be any clearer:  They require Mr. Pambianchi to indemnify Chrysler Financial from "any loss or damage to the Vehicle and *from all claims, losses and costs related to the use or condition of the vehicle*."  *See* Ex. H to DaimlerChrysler Insurance's Mot. for Summary J. [doc. # 61-11] ¶ 27 (emphasis added).  The language of the indemnification clause makes no distinction whatsoever between property damage claims arising from the operation of the vehicle – Mr. Pambianchi apparently does not dispute that the clause requires him to indemnify Chrysler Financial for such claims – and personal injury claims.  By its plain terms, the Lease

---

[4]  In one of the only cases Mr. Pambianchi cites to support his ambiguity argument, the Connecticut Appellate Court applied New York contract law rather than Connecticut contract law.  *See U.B. Vehicle Leasing, Inc. v. Davis*, 90 Conn. App. 206, 210 n.1 (2005), rev'g No. V000181472S, 2002 WL 31465888 (Conn. Super. Ct. Oct. 21, 2002).  Furthermore, the Connecticut Appellate Court specifically declined to reach the ambiguity issue and resolved the case on a totally unrelated ground.  *See id.* at 217 ("The plaintiff next claims . . . the indemnity provision of the lease agreement was ambiguous. We decline to review that claim.").  That case lends no support to Mr. Pambianchi.

requires Mr. Pambianchi to indemnify Chrysler Financial for all claims, of any kind, that relate to the use of the leased automobile. *Cf. Smith v. Mitsubishi Motors Credit of Am., Inc.*, 247 Conn. 342, 348 (1998) (noting in dicta that an indemnification clause in an automobile lease agreement similar to the one at issue in this case "unambiguous[ly]" required the lessee to indemnify the lessor for all tort claims).

The only specific argument Mr. Pambianchi makes to support his argument that the indemnification clause is ambiguous is that the clause does not specifically refer to personal injury claims. Mr. Pambianchi points out that a different clause of the Lease specifically required him to carry a minimum amount of insurance to cover fire and theft, collision, liability for bodily injury or death, and liability for property damage. *See id.* ¶ 16. But the Court is not persuaded that any ambiguity arises from the fact that the Lease uses relatively specific terms in the numbered paragraph discussing minimum insurance coverage and relatively general terms in the separately numbered paragraph discussing indemnification. Mr. Pambianchi cites no Connecticut cases for that proposition, and the Court is not aware of any such principle in Connecticut law. Furthermore, in this case, the minimum insurance clause – which preceded the indemnification clause in the Lease – would in the Court's view have been sufficient to put any reasonable person who read the Lease on notice that the broad phrase "all claims, losses and costs" would *at a minimum* include claims related to fire, theft, collision, personal injury, and property damage.

In sum, the indemnification clause is unambiguous. It clearly requires Mr. Pambianchi to indemnify Chrysler Financial – or its subrogees – for any claims against it arising from the use of the

Cherokee.  That includes the Sabbas' claim against Chrysler Financial, whether or it not Mr. Pambianchi correctly characterizes that claim as a personal injury claim.

**B.**

The second issue that the Court must resolve is whether the broad indemnification clause in the Lease is unconscionable.  Mr. Pambianchi argues in opposition to summary judgment that the indemnification clause is both substantively and procedurally unconscionable and thus unenforceable as a matter of Connecticut law.  Whether a provision of a contract is unconscionable or void on account of public policy is a legal issue, not a factual issue.  *See NML Capital v. Republic of Argentina*, 621 F.3d 230, 236 (2d Cir. 2010); *see also Chesire Mortg. Serv., Inc v. Montes*, 223 Conn. 80, 87 (1992) ("The question of unconscionability is a matter of law to be decided by the court based on all the facts and circumstances of the case." (citation omitted)).  This Court may therefore resolve that issue at the summary judgment stage.

"The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise."  *See Cheshire Mortg. Serv.*, 223 Conn. at 88.  "The classic definition of an unconscionable contract is one 'which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.'"  *Bender v. Bender*, 292 Conn. 696, 731-32 (2009) (citation omitted).  To raise unconscionability as a defense in an action to enforce a contract, the party opposing enforcement must typically "show[] that the contract was both procedurally and substantively unconscionable when made – *i.e.*, . . . show[] . . . an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  *Id.* at 732 (citation omitted).  In rare cases, a provision of

14

a contract may be so outrageous as to warrant holding it unenforceable based on substantive unconscionability alone.  *See Hottle v. BDO Seidman LLP*, 268 Conn. 694, 720-21 (2004).

The indemnification clause of the Lease is not substantively unconconscionable.  At oral argument, Mr. Pambianchi's counsel refused to abandon his client's substantive unconscionability argument.  But when pressed by the Court or oral argument, Mr. Pambianchi's counsel was unable to identify *any* specific basis for the substantive unconscionability argument.  In fact, Mr. Pambianchi's counsel eventually conceded that an automobile lease agreement that used ordinary language sufficient to put an ordinary person on notice that he or she would be liable to the lessor for personal injury claims would be *fully enforceable* as a matter of Connecticut law.  The Court therefore deems Mr. Pambianchi to have abandoned his substantive unconscionability argument.

But even assuming that Mr. Pambianchi had not waived his substantive unconscionability argument, the Court would still conclude that an automobile lessee's agreement to indemnify the lessor for any liability – including personal injury liability – that the lessor might incur as the owner of the vehicle is not the sort of agreement to no man in his right mind would make.  *See Bender*, 292 Conn. at 731-32.  To the contrary, it is a common agreement that countless people who want to lease, rather than purchase, automobiles decide to enter every single day in this country, including customers of Pamby Motors.  *See, e.g.*, *Allianz Global Corporate & Specialty, N.A. v. Sacks*, Nos. 08 Civ. 563 (LTS), 08 Civ. 8902 (LTS), 2010 WL 3733915 at *6 (S.D.N.Y. Sept. 23, 2010) (rejecting the argument that a similar indemnification provision in a Mercedes Benz Credit Corp. form lease was unconscionable under New York law).

15

Mr. Pambianchi's argument to the contrary is not only unpersuasive, but it also flies in the face of established Connecticut Supreme Court precedent. In *Smith v. Mitsubishi Motors Credit of America, Inc.*, the Connecticut Supreme Court held that an indemnification clause in an automobile lease agreement virtually indistinguishable from the one at issue in this case was not substantively unconscionable. *See* 247 Conn. at 353. As the Supreme Court aptly reasoned, the argument that a broad indemnification clause in a lease agreement is substantively unconscionable "presumes that a contract clause is oppressive if it allocates to a tortfeasor all of the uninsured costs attributable to the tortfeasor's misconduct." *Id.* at 355. No such principle exists in Connecticut law. *See id.*

Although substantive unconscionability alone may in some rare cases be sufficient to void a contractual provision under Connecticut law, *see Hottle*, 268 Conn. at 720-21, the Court is not aware of any Connecticut precedent which would permit the Court to void a contractual provision based solely on procedural unconscionability. But even assuming that the Court could void a contractual provision on that ground alone, the Court is not persuaded that there was anything procedurally unconscionable about the circumstances under which Mr. Pambianchi entered into the Lease. Under Connecticut law, a court cannot find procedural unconscionability unless the party opposing enforcement of a contractual provision has introduced some *specific* evidence of overreaching by the other party in the formation of the agreement. *See Smith*, 247 Conn. at 351-52 (citing, among others, *Cheshire Mortgage Servs.*, 223 Conn. at 88-91). The record contains no evidence of overreaching by Chrysler Financial in its dealings with Mr. Pambianchi. To the contrary, it appears that Chrysler Financial dealt with Mr. Pambianchi fairly when he entered the Lease – which is only two pages long and contains no small print or hidden terms – and that Chrysler Financial's insurance company

16

continued to act fairly by giving Mr. Pambianchi prompt notice of the possibility that it would seek indemnification for the Sabbas' claim, *see* Ex. J to DaimlerChrysler Insurance's Mot. for Summary J. [doc. # 61-13].  and prompt notice again when it decided it would indeed seek indemnification for that claim.  *See* Ex. M. to DaimlerChrysler Insurance's Mot. for Summary J. [doc. # 61-13].

Instead of introducing specific evidence of overreaching by Chrysler Financial, Mr. Pambianchi has simply invoked the notion that the Lease is a "consumer contract."  *See* Conn. Gen. Stat. § 42-152. Mr. Pambianchi insists that the indemnification clause cannot be enforced because the language used in the clause and the placement of the indemnification clause in the Lease were not sufficient to put an "ordinary consumer" on notice of the lessor's right to seek indemnification for personal injury claims. Mr. Pambianchi's reliance on the concept of a "consumer contract" is somewhat surprising because Mr. Pambianchi is most certainly *not* an "ordinary consumer."  Rather, he is a Chrysler dealer who has persuaded his customers to sign lease agreements containing provisions identical to the one at issue in this case throughout his career in the automobile industry. Even assuming the contrary, however, there is no support in Connecticut law for the proposition that when contractual language fails to put an "ordinary consumer" on notice of its meaning, it is procedurally unconscionable and therefore voidable.  Indeed, although there is a Connecticut statute that mandates the use of simple language in so-called "consumer contracts," *see id.*, that statute specifically provides that contracts which fail to comply with its requirements are still fully enforceable.  *See id.* § 42-157(a).

Mr. Pambianchi may believe that the Lease is procedurally unconscionable because Chrysler Financial never specifically warned him about the indemnification clause.  But the Connecticut

17

Supreme Court held in *Smith* that "procedural unconscionability cannot be predicated solely on the failure by a commercial party proffering a form contract to an individual party to direct the individual's attention to specific terms of a contractual agreement." *Id.* at 355.  That is so because the principle of unconscionability does not supersede the duty of a contracting party to read and attempt to understand the terms of a written agreement before signing it.  *See id.* at 351-52.  Whether or not Mr. Pambianchi read the Lease at the time when he leased the Cherokee – indeed whether he *ever* read it – he is bound by it to the same extent as if he had read it.  *See Friezo*, 281 Conn. at 199.

## C.

The third and final issue that the Court must resolve is whether Chrysler Financial lost its right to seek indemnification because of its subsequent actions.  Mr. Pambianchi couches that argument in a veritable laundry list of legal terms: laches; express waiver; implied waiver; breach of the implied covenant of good faith and fair dealing; negligent misrepresentation; innocent misrepresentation; promissory estoppel; and equitable estoppel.  Given that laundry list of legal principles, it may be that Mr. Pambiachi's counsel cannot figure out any one legal principle which precisely aligns with his theory in this case. He asserts the theory as an affirmative defense to DaimlerChrysler Insurance's claim for indemnification, as a counterclaim against DaimlerChrysler Insurance, and even as a third-party claim against Chrysler Financial.  But the Court finds that no matter what legal terminology Mr. Pambianchi couches his theory in, there is absolutely no evidence in the record to support his position.  There is simply no disputed issue of material fact that would allow Mr. Pambianchi to evade summary judgment.

18

**1.**

Two of the theories Mr. Pambianchi espouses in support of his argument that Chrysler Financial lost its right to seek indemnification against him can be disposed of at the outset. First, Mr. Pambianchi asserts the defense of laches, arguing that Chrysler Financial and DaimlerChrysler Insurance waited too long to seek indemnification from him. But under Connecticut law, the defense of laches is an equitable defense that ordinarily may not be asserted in an action at law filed within the relevant statute of limitations. *See A. Sangivanni & Sons v. F.M. Floryan & Co., Inc.*, 158 Conn. 467, 474-75 (1969); *see, e.g.*, *Lucido v. Zurich Ins. Co.*, No. CV030081699, 2007 WL 196520, at *4 (Conn. Super. Jan. 12, 2007). DaimlerChrysler Insurance filed this action less than four years after the settlement in the Sabba case, and thus, within the relevant four-year statute of limitation to enforce an indemnification clause in a lease agreement. *See* Conn. Gen. Stat. § 42a-2A-715. The Court is not persuaded that there is anything exceptional about this case that would permit Mr. Pambianchi to assert laches as a defense. DaimlerChrysler Insurance immediately notified Mr. Pambianchi when it decided to seek indemnification from him though litigation if necessary, *see* Ex. M. to DaimlerChrysler Insurance's Mot. for Summary J. [doc. # 61-13], and resorted to litigation only as a last resort when the statute of limitations was about to expire.

Second, Mr. Pambianchi asserts in defense to liability that Chrysler Financial and DaimlerChrysler Insurance may not recover from him because they breached the implied covenant of good faith and fair dealing. But Mr. Pambianchi apparently misunderstands what it means to breach that covenant. The "duty of good and fair dealing is a covenant implied into a contract or a contractual relationship." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432

(2004) (citation omitted).  Every contract carries with it "an implied duty 'requiring that neither party will do anything that will injure the right of the other to receive the benefits of the agreement.'"  *Id.* (citation omitted).  The only way that Chrysler Financial – the party with which Mr. Pambianchi has a contractual relationship – could have breached the implied covenant of good faith and fair dealing is if it injured Mr. Pambianchi's right to receive benefits that the Lease entitled him to receive.  Mr. Pambianchi makes various allegations about misdeeds by Chrysler Financial, but he *does not* allege that Chrysler Financial did anything to interfere with his contractual entitlements.  Thus, Mr. Pambianchi's reliance on the implied covenant of good faith and fair dealing is misplaced.

## 2.

The Court next turns to Mr. Pambianchi's waiver and estoppel theories.  Mr. Pambianchi asserts as a defense to liability that Chrysler Financial and DaimlerChrysler Insurance expressly or impliedly waived their contractual right to seek indemnification.  He also asserts promissory estoppel and equitable estoppel counterclaims against DaimlerChrysler Insurance, and promissory estoppel and equitable estoppel as third-party claims against Chrysler Financial.  The Court finds there is no evidence in the record to support either Mr. Pambianchi's waiver defenses or his estoppel counterclaims and third-party claims.

The first iteration of Mr. Pambianchi's theory is the waiver theory.  According to Mr. Pambianchi, despite the fact that DaimlerChrysler Insurance demanded payment from him as early as March 18, 2005, *see* Ex. M. to DaimlerChrysler Insurance's Mot. for Summary J. [doc. # 61-13], DaimlerChrysler Insurance later expressly or impliedly waived its indemnification rights. As a general matter, "a party for whose benefit a provision in a contract is intended may waive his rights

under such provision." *Loda v. H.K. Sargeant & Assocs., Inc.*, 188 Conn. 69, 77 (1982) (citation omitted).  "Waiver is the *intentional* relinquishment of a known right."  *Wadia Enters., Inc. v. Hirshfeld*, 224 Conn. 240, 251 (1992).  Waiver need not be express; it can also "consist of acts or conduct from which waiver may be implied."  *Loda*, 188 Conn. at 76 (citation omitted).  However, waiver may be inferred only where "it is reasonable to do so."  *Id.* (citation omitted).

There is absolutely nothing in the record to support Mr. Pambianchi's express waiver theory.  Viewing the evidence in the record in the light most favorable to Mr. Pambianchi, it shows the following at most.  First, it shows that DaimlerChrysler Insurance informed Mr. Pambianchi of its intention to seek indemnification as early as March 18, 2005. *See* Ex. M. to DaimlerChrysler Insurance's Mot. for Summary J. [doc. # 61-13].  Second, it shows that Mr. Pambianchi then asked Mr. Miltz – an employee of Chrysler Financial with no authority to bind DaimlerChrysler Insurance – to seek a waiver of indemnification rights from DaimlerChrysler.  *See* Ex. A to Chrysler Financial's Mot. for Summary J. [doc. # 58-8] at 22.  Third, it shows that Mr. Miltz agreed to help Mr. Pambianchi seek waiver and promised to "see what [he could] do."  *Id.*  Fourth, the record shows that Mr. Miltz and Mr. Pambianchi – in Mr. Pambianchi's own words – "never broach[ed] the subject" of waiver request again, but that Mr. Miltz "would always ask is everything going okay." *See id.* at 14.  Fifth, the record shows that there were no further communications between Mr. Pambianchi and DaimlerChrysler Insurance regarding its intent to seek indemnification until DaimlerChrysler Insurance filed its Complaint in this case on June 23, 2008.  Nothing in the record, either on its own or in combination, shows anything close to an express waiver by DaimlerChrysler Insurance.  Simply put, no one – not even Mr. Miltz, who in any case most likely did not have any

authority to speak on DaimlerChrysler Insurance's behalf – ever explicitly told Mr. Pambianchi that DaimlerChrysler Insurance had agreed to waive its indemnification rights.

Nor does the evidence in the record support Mr. Pambianchi's implied waiver theory. It may well be true that Mr. Pambianchi inferred from Mr. Miltz's silence, from Mr. Miltz's questions about whether "everything [was] going okay," and from DaimlerChrysler Insurance's inaction together that DaimlerChrysler Insurance had agreed to waive its indemnification rights. But in determining whether DaimlerChrysler Insurance impliedly waived its indemnification rights, Mr. Pambianchi's subjective belief is irrelevant. Instead, the question is whether it would have been reasonable under the circumstances for Mr. Pambianchi to infer that DaimlerChrysler Insurance waived its indemnification rights by silence. *See Loda*, 188 Conn. at 76. Mr. Pambianchi never went to DaimlerChrysler Insurance himself to ask for a waiver, and never even made any explicit attempt to follow up with Mr. Miltz about his request. Instead, he simply waited and inferred from DaimlerChrysler Insurance's inaction that all was well, despite the fact that DaimlerChrysler had already demanded payment once, *see* Ex. M. to DaimlerChrysler Insurance's Mot. for Summary J. [doc. # 61-13], and that under Connecticut law, DaimlerChrysler Insurance could wait up to four years before seeking to enforce its rights in court. *See* Conn. Gen. Stat. § 42a-2A-715. Mr. Pambianchi apparently believes, relying on the Connecticut Supreme Court's statement in *Loda v. Sargeant & Associates, Inc.* that "[w]aiver is a question of fact for the trier," *id.*, that simply invoking the concept of implied waiver precludes a grant of summary judgment. But in this case, Mr. Pambianchi's invocation of an implied waiver theory does not preclude summary judgment because no reasonable jury could find implied waiver based on the evidence in the record.

22

The second iteration of Mr. Pambianchi's theory is the estoppel theory.  Mr. Pambianchi asserts counterclaims against DaimlerChrysler and third-party claims for promissory estoppel and equitable estoppel.  Under Connecticut law, "[a] fundamental element of promissory estoppel . . . is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance."  *Stewart v. Cendant Mobility Servs. Corp.*, 267 Conn. 96, 104 (2003).  There is no evidence in the record which could support a jury finding that either DaimlerChrysler Insurance or Chrysler Financial made a "clear and definite promise" not to seek indemnification from Mr. Pambianchi.  *Id.*

The doctrine of equitable estoppel is closely related to the doctrine of promissory estoppel. "[W]here one, by his words or actions, intentionally causes another to believe in the existence of a certain state of things, and thereby induces him to act on that belief, so as injuriously to affect his previous position, he is [precluded] from averring a different state of things as existing at the time." *Cowles v. Bacon*, 21 Conn. 451, 467 (1852); *see, e.g.*, *Johnnycake Mountain Assocs. v. Ochs*, 104 Conn. App. 194, 208 (2007).  "[T]here are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done." *LaSalle Nat'l Bank v. Freshfield Meadows, LLC*, 69 Conn. App. 824, 838 (2002).  "Furthermore, [i]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." *Kimberly-Clark Corp. v. Dubno*, 204 Conn. 137, 148 (1987).

There is no evidence in the record which would permit a reasonable jury to conclude that either DaimlerChrysler Insurance or Chrysler Financial intentionally caused Mr. Pambianchi to believe that DaimlerChrysler Insurance waived its rights. Mr. Pambianchi's admissions during his deposition testimony that Mr. Miltz did no more than promise to see what he could do about the indemnification issue, that Mr. Pambianchi and Mr. Miltz never again discussed the issue, and that Mr. Pambianchi never himself asked DaimlerChrysler Insurance for a waiver or attempted to follow up on Mr. Miltz's request dictates that conclusion. As the Connecticut Supreme Court has repeatedly recognized, "[i]t is well settled that silence will not operate as an estoppel absent a duty to speak." *Hanover Ins. Co. v. Fireman's Fund Ins. Co.*, 217 Conn. 340, 350 (1991) (citations omitted). Here, there is no evidence that DaimlerChrysler Insurance, Chrysler Financial, or even Mr. Miltz took on any such duty. Nor is there any evidence that Mr. Pambianchi took any steps to discern whether his impression that indemnification had been waived was in fact correct. *See Kimberly-Clark*, 204 Conn. at 148. Summary judgment for DaimlerChrysler Insurance and Chrysler Financial on Mr. Pambianchi's estoppel claims is thus appropriate.

### 3.

Finally, the Court turns to Mr. Pambianchi's misrepresentation theory. Mr. Pambianchi asserts counterclaims against DaimlerChrysler Insurance and third-party claims against Chrysler Financial for negligent misrepresentation and innocent misrepresentation. Connecticut law has "long recognized liability for negligent misrepresentation" as well as for "innocent misrepresentation . . . if [a] declarant has the means of knowing, ought to know, or has the duty of knowing the truth." *See Barton v. City of Bristol*, 291 Conn. 84, 102 (citation omitted). Falsity is an essential element of

a misrepresentation claim, and the party asserting a misrepresentation claim bears the burden of demonstrating that the party against whom the claim is asserted made representations that were in fact untrue.  *See Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 792-93 (1999).

There is nothing in the record that could be fairly characterized as an untrue statement by anyone at DaimlerChrysler Insurance or Chrysler Financial.  The only statements evidenced in the record are DaimlerChrysler Insurance's statement to Mr. Pambianchi in a letter that it *did* intend to seek indemnification from Mr. Pambianchi, *see* Ex. M. to DaimlerChrysler Insurance's Mot. for Summary J. [doc. # 61-13], and Mr. Miltz's statement that he would "see what [he could] do" about securing a waiver. Ex. A to Chrysler Financial's Mot. for Summary J. [doc. # 58-8] at 22.  Neither of those statements was false, and there is thus no evidence in the record to support a jury verdict in Mr. Pambianchi's favor on his negligent and innocent misrepresentation claims against DaimlerChrysler Insurance and Chrysler Financial.  Summary judgment is thus warranted on those claims as well.

## IV.

In sum, there is nothing ambiguous about the indemnification clause in the Lease, the indemnification clause in the Lease is fully enforceable, and Mr. Pambianchi has not introduced any evidence which would allow a reasonable jury to return a verdict in his favor on his affirmative defenses, on his counterclaims against DaimlerChrysler Insurance, or on his third-party claims against Chrysler Financial.  Because there are no genuine issues of material fact remaining in this case, the Court GRANTS Chrysler Financial's Motion for Summary Judgment [doc. # 58] and GRANTS DaimlerChrysler Insurance's Motion for Summary Judgment [doc. # 61].

**The Court directs the Clerk to enter judgment for DaimlerChrysler Insurance on Mr. Pambianchi's counterclaims and for Chrysler Financial on Mr. Pambianchi's third-party claims.**   As to DaimlerChrysler Insurance's claim against Mr. Pambianchi, DaimlerChrysler Insurance is entitled to a judgment in the amount of $600,000.00 plus interest and costs.  The Court directs DaimlerChrysler Insurance to submit a damages analysis to the Court no later than January 24, 2011 so that the Court can enter judgment on that claim.  Mr. Pambianchi will have an opportunity to respond to DaimlerChrysler Insurance's damages analysis should he wish to do so.

IT IS SO ORDERED.

/s/         Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: January 10, 2011.**

26